# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: | **JUDGE RICHARD L. SPEER** |
| Sandra S. Cekic-Torres | Case No. 09-3098 |
| Debtor(s) | (Related Case: 09-31584) |
| Sandra S. Cekic-Torres | |
| Plaintiff(s) | |
| v. | |
| Access Group, Inc. | |
| Defendant(s) | |

## DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiff/Debtor's Complaint to Determine Dischargeability. At issue at the Trial was whether the Plaintiff was entitled to receive a discharge of those obligations she incurred to finance her higher education pursuant to the "undue hardship" standard as set forth in 11 U.S.C. § 523(a)(8). After considering the evidence presented at the Trial, as well as the arguments made by the Parties, the Court, for the reasons set forth herein, finds that the Plaintiff is entitled to an "undue hardship" discharge of her educational debt(s).

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

## BACKGROUND

The Debtor, Sandra Cekic-Torres, is a married woman, 47 years of age. The Debtor has two teenage sons, both of whom are dependents of the Debtor. On March 18, 2009, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code.

At the time she filed her petition for bankruptcy relief, the Defendant, Access Group, Inc., held a claim against the Debtor based upon a prepetition extension of credit used by the Debtor to finance her post-baccalaureate education – with the Debtor obtaining in May of 2005 a master's degree in social work. Since the loan became due, no payments have been made by the Debtor on her obligation to the Defendant.

At the present time, based upon the accumulation and capitalization of interest, the Debtor owes approximately $100,000.00 to the Defendant. (Def. Ex. 1). The Debtor, alleging medical problems and a permanent disability, now seeks a determination that her educational debt to the Defendant is, as provided in 11 U.S.C. § 523(a)(8), a dischargeable debt because the repayment of the obligation would impose upon her and her dependents an "undue hardship." (Doc. No. 1). The Defendant, a private entity, contests this position, setting forth that the Debtor "either has or may have sufficient assets, income, and refinance options to permit her to satisfy" her outstanding obligation. (Doc. No. 9, ¶ 9).

## LAW

An individual, such as the Debtor, seeking relief under Chapter 7 of the Code does so with the aim of obtaining an immediate discharge of their debts. *Schultz v. U.S.*, 529 F.3d 343, 346 (6th Cir. 2008). In exchange, all of a debtor's nonexempt assets are subject to liquidation and then distribution to satisfy prepetition claims held by creditors. *Id.*

Page 2

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

In a Chapter 7 case, the Bankruptcy Code presumes that a discharge shall be granted in a debtor's favor. 11 U.S.C. § 727(a). A discharge entered in a debtor's favor, however, does not operate to discharge all debts. The reach of a bankruptcy discharge is, instead, limited to dischargeable debts, with § 523(a) of the Code prescribing certain categories of debts which are deemed to be nondischargeable.

Loans incurred to finance a higher educational fall within the category of debts which are deemed to be nondischargeable, subject to this limited exception: Excepting the obligation from discharge would impose upon the debtor or a dependent an "undue hardship." As set forth in § 523(a)(8):

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
>> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
>>
>>> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>>>
>>> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>>>
>>> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

## DISCUSSION

In this matter, the Debtor did not contest that the Defendant's claim qualified as the type of debt falling within the ambit of § 523(a)(8). Instead, the only issue placed before the Court was whether, as applied to § 523(a)(8), excepting the Defendant's claim from discharge would impose upon the Debtor an "undue hardship." A determination of this matter, involving the dischargeability of a particular debt, is deemed to be a core proceeding, thereby conferring upon this Court jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1)/(2)(I).

The Bankruptcy Code does not define the term "undue hardship," leaving the interpretation of the term to the courts. For this, while different approaches have been developed, all courts agree that the statute's use of the adjective "undue" indicates that Congress viewed garden-variety financial hardships as an insufficient basis to discharge student loans. *See Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087 (9th Cir. 2001). In recognition of the heightened standard of financial hardship needed to discharge student loans under § 523(a)(8), the Sixth Circuit Court of Appeals adopted a three-part test, known as the Brunner test, named for the case from which it originated.[1] *Barrett v. Educational Credit Management Corp.*, 487 F.3d 353, 358 (6th Cir. 2007), *citing Oyler v. Educ. Credit Mgmt. Corp.*, 397 F.3d 382, 385 (6th Cir. 2005).

Under the Brunner test, three elements must exist for a debtor to obtain an "undue hardship" discharge of their student-loan debt:

> (1) That the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

---

[1] *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir. 1987).

Page 4

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

>   (2) The additional circumstances exist indicating that this state of affairs is
>   likely to persist for a significant portion of the repayment period of the student
>   loans;
>
>   (3) That the debtor has made good faith efforts to repay the loans.

It is a debtor's burden to show the existence of each of these elements by at least a preponderance of the evidence. *Barrett*, 487 at 358-59.

### First prong of the Brunner test

For the first prong of the Brunner test, whether the debtor has the present ability to repay their student loan, the Court finds that the Debtor has met her burden. First, using a 20-year period of amortization, at a 5% rate of interest, it is recognized in this matter that the Debtor's student loan, standing at approximately $100,000.00, would require a monthly payment of $660.00. The financial figures before the Court, however, show that if she were to repay this debt, there is simply no means by which to stretch the Debtor's remaining income so as to enable her to maintain basic necessitates, such as that for food, shelter, utilities and medical care for herself and her two children.

At the time she filed for bankruptcy relief, the Debtor's sole source of income was a disability payment of $1,600.00 per month. Moreover, this source of income has since ceased, with the Debtor explaining that, given her failure to adequately pay into the Social Security system, her ability to collect disability payments, now or in the future, is tenable. Presently, the Debtor related that she is dependent on financial help from friends and family members. The Debtor also testified that, since filing for bankruptcy, she has separated from her husband, thereby further straining her household budget as she no longer has access to his income.

Accordingly, using purely her income and necessary expenses as a guide, the Debtor does not have the means by which to pay her educational obligation. In this regard, a debtor, in order to repay

Page 5

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

their educational debt, is not required to live in abject poverty. *In re Hornsby*, 144 F.3d 433, 438 (6th Cir. 1998). Instead, the 'minimal standard of living' component, as contained in the first prong of the Brunner test, anticipates that a debtor will allocate sufficient resources to maintain basic necessities, such as that needed for food, shelter, clothing and medical treatment. *Rutherford v. William Ford Direct Loan Prog. (In re Rutherford)*, 317 B.R. 865, 877 (Bankr. N.D.Ala. 2004).

Even so, the Debtor's income and expenses do not present the entire picture. In her bankruptcy filing, the Debtor disclosed that she had fee interests in four parcels of real property. These properties, the Debtor disclosed, have an aggregate value of $260,000.00. The Defendant, pointing to these assets, claimed the properties constituted a potential financial resource from which the Debtor could repay her student-loan obligation.

This Court has previously recognized that a debtor, even though having very little income, may still be found to have the ability to repay their student loan when it is shown that the debtor has, or will likely have, access to significant assets which could be utilized to repay the loan. *Green v. Sallie Mae Serv'g Corp. (In re Green)*, 238 B.R. 727, 735 (Bankr. N.D.Ohio 1999). *See also Ordaz v. Illinois Student Assistance Comm'n (In re Ordaz)*, 287 B.R. 912, 920 (Bankr. C.D.Ill. 2002) (student loan discharged where the court observed that, among other considerations, the debtor had not accumulated any significant wealth or property since the loan became first payable); *Race v. Educ. Credit Mgmt. Corp., et al. (In re Race)*, 303 B.R. 616, 624 (Bankr. D.Minn. 2004) (when assessing "undue hardship," court should consider debtor's future financial resources, including assets).

To hold otherwise, and allow a debtor with access to significant assets to escape their student-loan obligations, would undercut the inherent nature of an "undue hardship" inquiry: Ensuring that debtors with the means to repay their student loans do so. Consequently, the issue raised by the Defendant, regarding the Debtor's properties is well warranted, requiring the Debtor to show why her

Page 6

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

properties do not constitute an available financial resource which could be used to repay her educational obligation.

In support of her burden, the Debtor testified that, for the four parcels of property, she only intended to maintain an interest in one of the parcels – her residence. This property, valued at $70,000.00 is fully encumbered, and is owned jointly by the Debtor with her estranged husband. To this end, the Debtor explained that her fee interest in the three nonresidential properties was obtained as an accommodation for three relatives who did not have access to sufficient credit to buy the properties in their own right.

The Court must necessarily approach the Debtor's position with caution. When a debtor, whether by a deed or another instrument evidencing title, is named as the owner of property, recognizing an unnamed, third party can lead to uncertainty and carries with it the potential for manipulation. As a result, the Court has not been receptive to attempts made by debtors who, while seeking the benefits of the Bankruptcy Code, seek to disclaim their interests in property. For example, this Court has declined to recognize that a debtor can avoid the turnover of their vehicle to the bankruptcy trustee, where the debtor is named on a vehicle's certificate of title, by claiming the existence of an oral trust in favor of a third party. *In re Caddarette*, 362 B.R. 829 (Bankr. N.D.Ohio 2006).

Yet, having said this, the issue before the Court is not purely one of ownership. Instead, the substantive matter before the Court is one of "undue hardship" under § 523(a)(8). Specifically, whether the Debtor, after accounting for her interests in real property, can still maintain a minimal standard of living if forced to repay her student loan. The issue regarding the Debtor's properties is still, therefore, whether the properties constitute a potential financial resource which the Debtor could utilize to repay her student-loan obligation.

Page 7

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

After considering the evidence as a whole, the Court, while initially troubled that the Debtor, owning $260,000.00 worth of property, sought an "undue hardship" discharge of her student loan, is satisfied that the properties owned by the Debtor do not constitute a viable financial resource which could be utilized to repay her student loan. Importantly, there is no evidence that the Debtor ever financially benefitted from the properties occupied by her relatives. Rather, the Debtor's actual interest in the properties was simply that of a conduit, whereby the Debtor, after receiving payments from her relatives, transferred those payments to the creditors holding a mortgage interest in the properties.

Two considerations also show that, on a forward going basis, the Debtor will no longer be able to look to the properties as a potential financial resource. First, mortgages fully encumber each of the Debtor's properties, depriving the Debtor of any equity which could be immediately used to pay her student-loan debt. Second, the Debtor disclosed, in an updated statement of financial affairs filed with the Court, an intent to surrender her fee interest in the three properties occupied by her relatives.

In sum, the evidence in this matter tends to show that, based upon her current financial condition, the Debtor could not maintain a 'minimal' standard of living if required to pay her student-loan obligation to the Defendant. It is, thus, the holding of this Court that the Debtor has sustained her burden under the first prong of the Brunner test.

### Second prong of the Brunner test

The second prong of the Brunner test requires a debtor to show that additional circumstances exist indicating that their financially distressed state of affairs is likely to persist for a significant portion of the loan's repayment period. This element of the Brunner test goes to the core of the "undue hardship" standard of § 523(a)(8) by ensuring that the financial hardship the debtor is experiencing is actually "undue," as opposed to the garden-variety financial hardship which, by definition, all debtors

Page 8

**Sandra S. Cekic-Torres v. Access Group, Inc.**
**Case No. 09-3098**

who seek bankruptcy relief experience. *Morrow v. U.S. Dep't of Educ. (In re Morrow)*, 366 B.R. 774, 778 (Bankr. N.D.Ohio 2007).

To fulfill its function, the Sixth Circuit Court of Appeals has construed the second prong of the Brunner Test strictly, requiring that the events giving rise to a claim of "undue hardship" must be beyond the debtor's control and stem from conditions that are likely to continue for the foreseeable future. *Oyler v. Educational Management Credit Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005). In the words of the Court:

> Such circumstances must be indicative of a certainty of hopelessness, not merely a present inability to fulfill financial commitment. They may include illness, disability, a lack of useable job skills, or the existence of a large number of dependents. And, most importantly, they must be beyond the debtor's control, not borne of free choice. Choosing a low-paying job cannot merit undue hardship relief.

*Id.* at 366 (internal citation and quotation omitted).

Consistent with this decision, and is common in many cases where an "undue hardship" discharge of a student loan is sought, the Debtor in this case relies on a medical disability as the basis for her compliance with the second prong of the Brunner test. In support of this position, the Debtor testified that she currently suffers from different medical conditions – particularly, diabetes and non-healing and infectious leg wounds. The Debtor further explained that her leg wounds are the result of a staph infection she contracted in 2005 after having surgery. Contracting the leg wounds from the surgery then, according to the Debtor, lead to the following chain of events.

First, because her leg wounds inhibited her ability to work, the Debtor explained that, in August of 2005, she took a furlough from the full-time job she held with the state of Ohio. Subsequently, as the wounds to her legs did not properly heal, the Debtor related that she was forced

Page 9

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

to leave her position with the state of Ohio, thereafter receiving income under a short-term disability policy. The Debtor finally explained that her medical conditions continue to interfere with her ability to perform basic daily activities, and as a result, except for a short period of employment at a fast food restaurant, she has been unable to work.

As support for her position, the Debtor did not produce any medical records. Rather, besides her statements, the only evidence before the Court corroborating the Debtor's medical conditions and inability to work was photographic. The Debtor, in this regard, introduced into evidence a number of photographs showing gapping wounds on both of her legs. (Doc. No. 35, Ex. 1, 2 & 3).

This evidence, however, while substantiating the existence of her leg wounds, does little in the way of offering the Court a means by which to gauge the severity and therefore impact the Debtor's medical conditions will have on her ability to work and earn a living. In this way, the Sixth Circuit Court of Appeals has held that a debtor is not competent to testify as to matters concerning prognosis and causation, and is instead generally limited to testifying to matters concerning diagnosis and how the medical condition affects them personally. *Barrett v. Educational Credit Management Corp.*, 487 F.3d 353, 362 (6th Cir. 2007).

Given this evidentiary limitation, a debtor's testimony regarding a medical condition will often fall short under the second prong of the Brunner test. *See Tirch v. Pennsylvania Higher Education Assistance Agency*, 409 F.3d 677, 681 (6th Cir. 2005) (debtor's testimony by itself failed to meet the "undue hardship" standard). As previously observed by this Court: "when a debtor's health, whether mental or physical, is put at issue, some corroborating evidence [should] be introduced to substantiate the debtor's position; bare allegations simply will not suffice. For example, if properly authenticated, letters from a treating physician could be utilized." *Matthews v. Sallie Mae Servicing (In re Matthews)*, 324 B.R. 319, 322 (Bankr. N.D.Ohio 2004).

Page 10

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

Under this condition, the Court, given the paucity of corroborating evidence, is not usually disposed to find in favor of the Debtor. *Morrow v. U.S. Dep't of Educ. (In re Morrow)*, 366 B.R. 774, 779 (Bankr. N.D.Ohio 2007). Yet, the Sixth Circuit Court of Appeals has, within the context of § 523(a)(8), declined to adopt an absolute rule requiring a debtor to submit independent medical evidence to corroborate their medical condition(s). *Barrett*, 487 F.3d at 356. Rather, in limited circumstances, when a debtor's medical condition, health status and inability to work cannot be reasonably controverted, a debtor's testimony may be accepted at face value. *Id.* at 363. As now explained, based upon the Debtor's physical demeanor, the Court, although bothered by the lack of corroborating evidence, is persuaded that such a limited circumstance exists here, warranting a finding that the Debtor's testimony regarding her medical problems and inability to work is credible.

First, having had the opportunity to observe the Debtor, the Court was struck by one underlying fact: the Debtor's morbid obesity. At the Trial, the Debtor, who is of average height, testified that she presently weighs 457 pounds. It is apparent that the Debtor's weight greatly interferes in all areas of her life. For example, at the Trial the Debtor could not sit in a normal chair and needed to use a cane to walk. Even then, the Debtor clearly struggled to walk and maintain her balance.

The Debtor's weight also helps to substantiate her medical conditions. It is common knowledge that severe obesity can cause a person to become diabetic and that diabetes can interfere with a person's ability to heal; ergo, the Debtor's non-healing leg wounds. Outwardly, it is also evident that the Debtor's weight has taken a tremendous toll on her health. From the Court's observations of the Debtor at the Trial, the Debtor's complection was not what one would expect to encounter from a healthy individual. As well, the Debtor, although only 47 years of age, appeared much older.

Consequently, while the Court is not normally inclined to accept a debtor's statements regarding their medical conditions and inability to work at face value, these particular facets of the Debtor's situation are of sufficient gravity so as to substantiate her claims. For this purpose, it is

Page 11

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

important to note that no evidence was offered controverting the Debtor's account of her medical conditions and the effect the conditions have on her life. This is particularly significant, the Sixth Circuit has observed that, if a creditor genuinely disputes a debtor's viable claim concerning their medical conditions, they should subpoena the debtor's medical records. *Id. citing* 5 U.S.C. § 552a(b)(11) (permitting medical records to be disclosed "pursuant to the order of a court of competent jurisdiction"); 45 C.F.R. § 164.512(e)(1) (providing that a "covered entity may disclose protected health information in the course of any judicial or administrative proceeding," including in response to a subpoena). The Defendant, however, did not avail itself of this opportunity.

Accordingly, given her medical conditions, and related physical difficulties, the Court is persuaded that the Debtor's prospects for future employment are some what bleak. As a result, it is the Court's conclusion that the Debtor's financial situation is unlikely to change for the foreseeable future, thereby substantiating the Debtor's assertion that, under the second prong of the Brunner test, additional circumstances exist indicating that her financially distressed state of affairs is likely to persist for a significant portion of her student loan's repayment period. The Court now turns to address the final prong of the Brunner test: whether the Debtor has made a good faith effort to repay her student loans?

### Third prong of the Brunner test

Under the third prong of the Brunner test, a debtor may only receive an "undue hardship" discharge of their student loan if they have made a good faith effort to repay the obligation. This requirement serves the goal of helping to ensure that a debtor acts responsibly toward their creditor given that educational loans are in many cases extended without regards to a debtor's creditworthiness, with the expectation that the debtor will use their education to obtain remunerative employment so as to be able to repay the debt. *Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236, 243 (Bankr. N.D.Ohio 2003).

Page 12

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

Considering that it looks to a debtor's efforts to repay the student loan, a primary consideration for the third prong of the Brunner test is axiomatic: the extent to which any voluntary payments were made toward the student-loan obligation. *Morrow v. U.S. Dep't of Educ. (In re Morrow)*, 366 B.R. 774, 779 (Bankr. N.D.Ohio 2007) (inherent in any good-faith analysis under the third prong of the Brunner test is whether and the extent to which the debtor actually made any voluntary payments on the obligation). And for this requirement, the Debtor starts at a disadvantage, having failed to make any voluntary payments toward her student loan, even declining to allocate a portion of past tax refunds toward the obligation.

Still, this Court has observed that "'good faith' is an amorphous concept, and therefore is largely dependent upon the differing circumstances of each case. As such, whether a debtor has made payments on a student-loan obligation will not always be dispositive. *Grant v. United States Dept. of Educ. (In re Grant)*, 398 B.R. 205, 212 (Bankr. N.D.Ohio 2008). To this end, the Debtor's lack of payments to the Defendant is tempered by a number of ameliorating factors, beginning with the sequence of two events.

First, the event precipitating the Debtor's inability to hold a job, and resulting financial decline, was the staph infection she contracted after surgery. Second, this surgery occurred shortly after the Debtor received her master's degree in May of 2005. The sequence and close proximity between these two events, the Debtor's graduation and surgery, tends to show that the Debtor never had a meaningful opportunity to repay her student-loan obligation. Under this condition, it hardly seems fair to penalize the Debtor for her lack of payments to the Defendant.

It is also just as important that the Debtor's actions, both before incurring her obligation with the Defendant and after the loan became due, tend to show that she had every intention of repaying her educational debt. Particularly, the evidence shows that the Debtor fully repaid the student loans she had incurred to obtain her undergraduate degree. The Debtor also initially received a deferment on her

Page 13

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

obligation with the Defendant, but was later denied an extension. Such events exhibit a responsible approach and are hardly indicative of a person who is intent on taking advantage of the financial assistance offered them.

Finally, it is also worth mentioning what type of relief was not available to the Debtor. Financially distressed debtors, whose student loans are made, insured or guaranteed by the federal government can often obtain relief from their educational debts outside of bankruptcy. For example, there exists what is known as an Income Contingent Repayment Program which, subject to annual adjustments, pegs monthly payments on a student loan to the borrower's income, family size and total amount borrowed. 20 U.S.C. § 1087e(d)(1)(D); 34 C.F.R. § 685.209(c)(3). Similar to this program, Congress just recently enacted what is known as the Income Based Repayment Program. 20 U.S.C. § 1098e.

When such relief is available, the Sixth Circuit has held that a debtor who fails to take advantage of the repayment program bears a heavy burden of proving that they made a good faith effort to repay their educational loans. *Tirch v. Penn. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 683 (6th Cir. 2005) (addressing the Income Contingent Repayment Program). In this matter, however, with Defendant being a private entity, and the loan not being insured by the federal government, it would appear that such relief was not available to the Debtor. Consequently, in the absence of the Defendant agreeing to a modification of its loan, which apparently the Debtor sought but was not provided, the only relief available to the Debtor was through the bankruptcy process.

Therefore, while the Debtor did not actually make any payments on her educational debt, all indications are that the Debtor intended, in good faith, to repay the Defendant, but was prevented from doing so by events beyond her reasonable control. Accordingly, as with the previous two prongs of the Brunner test, the Debtor has sustained her burden under the third prong of the Brunner test, showing

Page 14

Sandra S. Cekic-Torres v. Access Group, Inc.
Case No. 09-3098

that, given the circumstances, she made a good faith effort to repay her educational loan with the Defendant.

## CONCLUSION

For all those reasons set forth in this case, the Court finds that the Debtor has sustained her burden under each of the three prongs of the Brunner test. Given this finding, the law requires that the Debtor be afforded an "undue hardship" discharge of her educational debt pursuant to 11 U.S.C. § 523(a)(8). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, pursuant to the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8), the educational obligation held by the Defendant, Access Group, Inc., against the Plaintiff/Debtor, Sandra S. Cekic-Torres, be, and is hereby, determined to be a DISCHARGEABLE DEBT.

Dated: May 13, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 13th day of May 2010 to:

Sandra S. Cekic-Torres
446 Shaddowbrook
Oregon, OH 43616

Edward Lee Schimmel
Hizer & Schimmel
4303 Woodville Rd.
Northwood, OH 43619

Access Group, Inc.
c/o YCS&T Services, LLC
1000 West Street Brandywine Bldg.
17th Floor
Wilmington, DE 19801

Tami Hart Kirby
Porter Wright Morris & Arthur LLP
One South Main Street
Suite 1600
Dayton, Oh 45402

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court